```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION


CITY OF PORT GIBSON, BY AND
THROUGH ITS MAYOR, FRED REEVES,
AND THE BOARD OF ALDERMEN                              PLAINTIFF

VS.                          CIVIL ACTION NO. 5:13-cv-121(DCB)(MTP)

FNBS INVESTMENTS, INCORPORATED
A/K/A FNBS INVESTMENT, INC.;
CREWS AND ASSOCIATES, INCORPORATED;
MALACHI FINANCIAL PRODUCTS, INC.;
ELTEKON CAPITAL, LLC; DEMARCO J.
BELL; GUYDON LOVE, LLP; EDSEL GUYDON;
JWON NATHANIEL; AMELDA ARNOLD;
THOMAS RUSSUM; EDDIE WALLS, JR.;
MICHAEL WHITE; VERA JOHNSON; KENNETH
DAVIS; ELVIN PARKER; PAUL WINFIELD;
AND JOHN DOES 1-10                                    DEFENDANTS
```

                    MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff City of Port Gibson, by and through its Mayor, Fred Reeves, and the Board of Alderpersons ("City of Port Gibson" or "City")'s Motion to Remand **(docket entry 11)**. Having carefully considered the motion and response, the memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

The Complaint in this action was originally filed in the Circuit Court of Claiborne County, Mississippi, and subsequently removed to this Court by defendant Crews and Associates, Inc. ("Crews"). The removal has been joined in by defendant FNBS Investments, Incorporated ("FNBS"). In the notice of removal, these defendants allege that "Plaintiff has no possible basis for

recovery against in-state defendants Amelda Arnold, Thomas Russum, Eddie Walls, Jr., Michael White, Vera Johnson, Kenneth Davis, Elvin Parker, Paul Winfield, and Jwon Nathaniel, and all have been fraudulently joined in this action solely to defeat diversity of citizenship jurisdiction." Notice of Removal, ¶ 5.

"When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court." Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)( citing 28 U.S.C. § 1441(a)). "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572 (5th Cir.2004).

"The doctrine of improper joinder [formerly known as fraudulent joinder] rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been properly joined." Id. at 573. The Fifth Circuit recognizes two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).

In this case, the second method applies because the defendants

2

do not dispute the in-state defendants' citizenship.  See Travis, 326 F.3d at 647.  "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  Smallwood, 385 F.3d at 573.  This test is to be employed "[a]fter all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party."  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002).  The Fifth Circuit has rejected the contention that "any mere theoretical possibility of recovery ... suffices to preclude removal," instead requiring "arguably a reasonable basis for predicting that state law would allow recovery."  Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286 n.4 (5th Cir. 2000).  The defendants bear a heavy burden of proving improper joinder. Smallwood, 385 F.3d at 576.

Courts in this circuit resolve issues of alleged improper joinder in one of two ways.  First, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."  Smallwood, 385 F.3d at 573.  Ordinarily, this analysis will be determinative.  Id.

However, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. The Fifth Circuit has cautioned that:

> a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant .... Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

Id. at 573-74.

The presence of any one properly joined Mississippi defendant will defeat diversity jurisdiction. The Court also notes that the fact that a particular defendant has not yet been served does not mean he or she has been improperly joined. See Jones v. Lumberman's Mutual Cas. Co., 2002 WL 31012606, at *2 (E.D. La., Sept. 9, 2002)("The existence vel non of subject matter jurisdiction simply cannot, as a practical matter, fade in and out depending upon the temporal situation of a party's inability to serve a particular defendant."); Jamison v. Kerr-McGee Corp., 151 F.Supp.2d 742, 746 (S.D. Miss. 2001)("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.").

The City of Port Gibson's Motion to Remand asserts that its Complaint seeks compensatory damages from the former Alderpersons and Mayor of Port Gibson, individually, and from two attorneys hired by the Board of Alderpersons, Jwon Nathaniel and Paul Winfield, all of whom are resident citizens of Mississippi. The Complaint alleges that the former Alderpersons and Mayor entered into a lease purchase agreement with defendant Eltekon Capital, LLC ("Eltekon") in contravention of statutory law.

The Mississippi Supreme Court has held that "[i]t takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county [or city] by a contract ...." Bridges & Hill v. Bd. of Supervisors, 58 Miss. 817, 820 (1881). A municipal board "can only act as a body, and its act must be evidenced by an entry on its minutes." Thompson v. Jones County Cmty. Hosp., 352 So.2d 795, 796 (Miss. 1977). A mayor and board of alderpersons of a city may not bind a subsequent administration to contracts without express statutory authority. See Whitworth College v. City of Brookhaven, 161 F.Supp. 775 (S.D. Miss. 1958).

The state supreme court has also held that

> [r]emedially, our statute law provides that any supervisor [or alderperson] who causes a contract to be let in violation of state law may be liable individually and on his official bond for compensatory damages "in such sum equal to the full amount of such unlawful contract, purchase, expenditure or payment" and "for penal damages" not in excess of $5,000.00. Miss. Code Ann. §§ 19-13-37 and 31-7-57(2) and (3)(Supp. 1986).

<u>Canton Farm Equipment, Inc. v. Richardson</u>, 501 So.2d 1098, 1104 (Miss. 1987). Since <u>Richardson</u> was decided in 1987, the relevant statutes have been amended. In 1988, section 19-13-37 was repealed by the legislature and section 31-7-57 was amended. Section 31-7-57 was amended again in 1997. The current relevant sections of 31-7-57 provide:

> (3) The individual members, officers, employees or agents of any agency or governing authority as defined in Section 31-7-1 [which includes "governing authorities of all municipalities"] causing any public funds to be expended, any contract made or let, any payment made on any contract or any purchase made, or any payment made, in any manner whatsoever, contrary to or without complying with any statute of the State of Mississippi, regulating or prescribing the manner in which such contracts shall be let, payment on any contract made, purchase made, or any other payment or expenditure made, shall be liable, individually, and upon their official bond, for compensatory damages, in such sum up to the full amount of such contract, purchase, expenditure or payment as will fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.
>
> (4) In addition to the foregoing provision, for any violation of any statute of the State of Mississippi prescribing the manner in which contracts shall be let, purchases made, expenditure or payment made, any individual member, officer, employee or agent of any agency or governing authority who shall substantially depart from the statutory method of letting contracts, making payments thereon, making purchases or expending public funds shall be liable, individually and on his official bond, for penal damages in such amount as may be assessed by any court of competent jurisdiction, up to three (3) times the amount of the contract, purchase, expenditure or payment. The person so charged may offer mitigating circumstances to be considered by the court in the assessment of any penal damages.

Miss. Code Ann. § 31-7-57(3) and (4)(Supp. 2013).

6

The City's Complaint alleges that the former mayor and alderpersons entered into the lease purchase agreement with Eltekon without a formal resolution, without holding a meeting, and without minutes. Complaint, p 7. The City further alleges that the agreement was made without statutory authority. Complaint, p. 8. In addition to a declaratory judgment and injunctive relief finding the former administration's actions <u>ultra vires</u>, the City seeks damages from the former mayor and alderpersons who entered into the agreement. Complaint, p. 10.

As for the in-state attorney defendants, the City alleges the existence of attorney-client relationships, and seeks damages from the attorneys for malpractice and/or breach of fiduciary duty based on the attorneys' advice that the mayor and alderpersons were authorized to enter into the lease purchase agreement, and/or that the procedure followed was lawful. Complaint, pp. 3, 5, 8, 10.

The Court finds that there is a reasonable basis for predicting that Mississippi law might impose liability against one or more of the in-state defendants in this case. Because the defendants have not shown that the City would not be entitled to any relief against an in-state defendant under any set of facts or any possible theory that it could prove consistent with the allegations in its Complaint, the plaintiff's motion to remand shall be granted.

Accordingly,

IT IS HEREBY ORDERED that the City of Port Gibson's motion to remand **(docket entry 11)** is GRANTED, and a separate order remanding this case to the Circuit Court of Claiborne County shall follow.

SO ORDERED, this the 6th day of March, 2014.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE